Counsel for appellant begin their reply brief with these words:
"We desire first to correct a misstatement of fact. Appellee says (brief 3) that LeRoy McMacken died July 22, 1940. As a matter of fact this was the date of the death of Alice Francis. LeRoy McMacken died in December, 1941 (T. R. 12)."
Appellant's corrective observation as to these dates is supported by the allegations in the petition filed by the Reconstruction Finance Corporation, but LeRoy McMacken must have died in December of 1940, as the final report of the administrator shows that he paid the funeral expenses of LeRoy McMacken on January 4, 1941.
In the early part of appellant's main brief the following paragraph appears:
"It is elementary that a distributive share in the estate of a decedent is a property right and as such is assignable. The validity of such an assignment is not involved in this case. In the Francis estate the distributee, LeRoy McMacken, made assignments of his distributive share, then died intestate. Rather, the principle of law involved is: Did the administrator have the right to recognize as valid the assignment and pay the distributive share of the deceased distributee to decedent's assignees instead of to the successor or legal representative of his estate?"
The final report of the administrator of the estate of Alice Francis, deceased, which was filed April 15, 1942, shows total receipts amounting to $64,930.30, and disbursements consisting of 72 items amounting to $61,764.45, leaving a balance on hand of $3,165.85. These various items of disbursements cover a period beginning August 15, 1940, and *Page 367 
extending to February 11, 1942. Seven of these items show sums paid out by the administrator pursuant to the assignments which had been made by LeRoy McMacken. The first two payments made on the strength of LeRoy McMacken's assignments were made on October 24th and 25th, 1940 one being to R.E. Bradley in payment of an attorney's fee due to him by LeRoy McMacken of $533.33 and the other being to LeRoy McMacken and Grace McMacken in the sum of $2,133.33. These two items were paid before McMacken's death and are not under attack here. They aggregate something over $2,600.00. The five payments or disbursements made by the administrator pursuant to the assignments executed by LeRoy McMacken and which are under attack here, are represented by items 34, 38, 45, 53 and 57, which payments were made in January, February and April of 1941. Apparently all five of these payments were made after the death of LeRoy McMacken.
It was not until January 27, 1942 that the Reconstruction Finance Corporation filed its petition in the county judge's court for the appointment of an administrator ad litem of the estate of LeRoy McMacken, and in response to this petition Mr. W.F. Bevis was appointed by the County Judge. This petition alleged that petitioner had secured a judgment against McMacken in South Dakota on March 8, 1938 in the sum of $7,627.50 and that the administrator of the estate of Alice Francis had distributed practically all of the assets of said estate without securing an order of distribution and that unless an administrator ad litem was appointed the remainder of the share of LeRoy McMacken in the Francis estate would be paid to Grace McMacken without authority of law, thus defeating the claim of petitioner against said estate. The petition contained no allegation of fraud against the administrator of the Francis estate. However, in the objections filed by the administrator ad litem to certain items in the final report of the administrator of the Francis estate it is alleged that the payments "purported to have been made pursuant to a pretended assignment from the said LeRoy McMacken to the said Grace McMacken, daughter-in-law of the said LeRoy McMacken, "were made without authority *Page 368 
of law, and that said assignment from LeRoy McMacken to Grace McMacken was fraudulent and void as to the creditors of LeRoy McMacken, who was insolvent at the time of making said assignment, and it was made without any consideration.
In the petition of V.A. Sims for the approval of his final accounting and for his discharge, he states that all the creditors and heirs of the estate of Alice Francis had been ascertained and determined and disposition made accordingly, and with respect to the above objection by the administrator ad litem, among other things administrator Sims says:
"That in answer to the objections filed by W.F. Bevis, as administrator ad litem of the estate of LeRoy McMacken, deceased, your petitioner shows that the said LeRoy McMacken before his death assigned all his right, title and interest in said estate to Grace McMacken and R.E. Bradley, which assignments were in good faith recognized by your petitioner, and all distributions made on the strength of said assignments were made before any objection was raised by anyone, and that said assignments are still in force and effect, not having been declared void or illegal by any court of competent jurisdiction; that the said W.F. Bevis, as administrator ad litem of the estate of LeRoy McMacken, deceased, has no right to object to the disbursements in the estate of Alice Francis, deceased, until said assignments are declared to be null and void and of no effect by some court of competent jurisdiction, since the said LeRoy McMacken before his death assigned all his right, title and interest in said estate, therefore, the legal representatives of the said LeRoy McMacken estate have no right in this cause so long as said assignments are in force and effect."
It will have been noted that the payments made pursuant to McMacken's assignments which are here under attack were all made shortly after his death. In common with the other concurring Justices, in our original opinion in this case, I entertained the view that after McMacken's death, the administrator of the Francis estate should have made no further payments on the assignments of McMacken's share in the estate except to an administrator of the latter's estate, but *Page 369 
upon a further consideration of the questions involved on this rehearing I have reached a different conclusion.
It will have been noted that V.A. Sims, as administrator of the estate of Alice Francis, paid the disputed amounts to the assignees of the distributee, LeRoy McMacken, before the appointment of W.F. Bevis as administrator ad litem, and before any objections were made thereto by him or any one else. There was nothing, therefore, for W.F. Bevis, as administrator ad litem, to receive; that is, there was apparently no estate of LeRoy McMacken, unless we hold that the assignments were void at the time the payments were made. The administrator's petition for approval of the final report shows, as we understand it, that all debts had been paid and that all distributees of the estate had been paid their shares in full.
Then there is the primary question as to whether or not V.A. Sims, as the administrator of the estate of Alice Francis, was authorized under the law to treat the now questioned assignments made by LeRoy McMacken of his distributive share in The Francis estate as valid. Evidently the County Judge thought that he had such right and authority during the life time of LeRoy McMacken, but if such assignments were good and entitled to be acted upon by the administrator during the life time of LeRoy McMacken, they were also good after his death, until set aside by some court of competent jurisdiction as being a fraud on the right of the creditors of LeRoy McMacken.
Certainly the County Judge had no jurisdiction to make such a determination, but by his orders the county judge did disallow these five items of the administrator's report and ordered him to pay the amount of such items to the court to be held subject to its further orders. This was done on the motion of the administrator ad litem appointed at the request of a creditor of LeRoy McMacken. In 34 C.J.S. 396-397 it is said:
"Payment should be made to the person entitled to receive the legacy or distributive share, or to his properly authorized representative or assignee, unless payment to a third person is directed by the legatee or distributee, or by the court. Distribution *Page 370 
to an assignee, however, is authorized only where the assignment is admitted and the validity thereof is not disputed, and only after the filing of his assignment, when and as required by statute, but payment to a legatee after notice of an assignment of his interest is at the risk of the representative." See also 24 C. J. 490.
Certainly these assignments were good as between the parties, even though voidable at the instance of creditors in an appropriate court. We have long so held. See Bellamy v. Sheriff of Jackson County as ex officio administrator, 6 Fla. 62.
In 18 C.J. Section 171, pp. 895-6, it is said:
"The interest of an heir or a distributee in the estate of a decedent who has died intestate may be assigned, provided he or she has not already received his share; and the validity of the distributee's assignment of his share cannot be contested by his creditors at the administrator's accounting," etc.
And further on in the same paragraph it is said:
"Where an heir or distributee assigns his interest in an unsettled estate, the effect is to divest him of his title or right and vest such title or right in the asssignee, but the assignment cannot in any way affect the condition of the estate or the rights of the administrator."
"Where an heir or distributee assigns his interest in an unsettled estate, the effect is to divest him of his title or right and vest such title or right in the assignee, but the assignment cannot in any way affect the condition of the estate or the rights of the administrator."
In Mr. Woerner's book, American Law of Administration, 3rd edition, Vol. 1, Sec. 151, it is said that the probate courts have no power to investigate the validity of an assignment of the interest of an heir or legatee; that the distribution should be to the legal holders of the property, leaving questions of disputed rights between these and creditors against them to be adjudicated in the ordinary courts; "but" he adds, "it must not be inferred from that the probate court has no authority to decree payment to an assignee whose right is not disputed or where the distributee is estopped by *Page 371 
a release;" etc. And in volume 3 of the same work, in section 563, it is said:
"Where an assignment is recognized, the assignee is, by the assignment, vested with all the rights of the assignor, and may assert them in his own name; hence, he may appear in the Probate court to demand an accounting, or where a legatee dies pending proceedings taken by him to compel an executor to account, having before his death assigned his legacy, the assignee may intervene and continue the proceedings, before the surrogate. But if the assignee (where the court has such jurisdiction) omit to present his claim before the order of distribution is made, he will be bound by the order in favor of the assignor; and conversely the assignor is bound where he fails to appear on distribution directed to the assignee. So also the assignee is concluded by a judgment adverse to the assignor in a contest between the latter and others on the question of heirship. The assignee stands in the same relation to the estate as the heir would if he had not assigned; hence he is estopped from objecting as to any matters to which the heir could not have objected."
See also in this connection 26 C.J.S. 1121, 1231 and 1233. In 26 C. J., p. 1233, the following appears:
"The right of a creditor of an heir or distributee is not enforceable in the probate, surrogate's or other court in which the administration is being had, as ordinarily that court is without jurisdiction to determine and enforce this right.
"Where the creditor has a judgment against the heir or distributee and also has an adequate remedy at law, as by levy and sale under execution, he cannot sue in equity; but where the creditor has no adequate remedy at law, he may proceed in equity to reach the interest of the heir or distributee in the estate of decedent, and where equity has once acquired jurisdiction, it will retain it and enforce legal rights if necessary to do complete justice between the parties. A statute providing that their heir may be sued in equity for the debts of decedent and that the creditor may thereby obtain a lien on any specified property descended and not *Page 372 
therein aliened relates to a debt of decedent and not to a debt of the heir. In a suit to enforce a debt in the latter class the creditor can obtain a lien only in the ordinary way, that is, by attachment or execution."
In the light of the authorities, and under the facts of this case, administrator Sims was justified in making the payments of the portions of the distributive share of LeRoy McMacken in the Francis estate to LeRoy McMacken's assignees, and the County Judge was in error in making the order requiring him to pay into his court the amount of the sums thus distributed by Sims.
In this general connection, see Mott v. First National Bank,98 Fla. 444, 124 So. 36; and Spitzer v. Branning, 135 Fla. 49,184 So. 770.
Upon this rehearing and upon a reconsideration of our former opinion and judgment in this case we have reached a different conclusion from that originally arrived at. Therefore our former opinion is modified in the respects above pointed out and our judgment of reversal is vacated. Our judgment now is that the judgment of the circuit court reversing the order of the County Judge's Court be and the same is hereby
Affirmed.
BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.
THOMAS, J., adheres to original opinion.
TERRELL and SEBRING, J., not participating.